IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| SANDRA HAWKINS, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-16-3752 |
| ELAINE CHAO, SECRETARY, UNITED STATES DEPARTMENT OF TRANSPORTATION, | * | |
|  | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff is a former employee of the Federal Aviation Administration ("FAA"), having worked at the Baltimore Flight Standards District Office ("FSDO") as an Aviation Safety Inspector. (Am. Compl. ¶¶ 1, 21-22, ECF No. 16.) Plaintiff brought this lawsuit in November of 2016 against her former employer, naming the Secretary of the United States Department of Transportation as Defendant, *see* 42 U.S.C. § 2000e-16(c), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Compl., ECF No. 1.) Plaintiff amended her complaint on May 22, 2017, and on July 3 Defendant brought a motion styled as a motion to dismiss or in the alternative for summary judgment, (Mot. Dismiss, ECF No. 20). Plaintiff has responded (ECF No. 25), Defendant has replied (ECF No. 30), and the issues are fully briefed. There is no need for a hearing to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Plaintiff did not properly exhaust her administrative remedies and therefore Defendant's motion, construed as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), will be granted by accompanying order.

**I.    *Nature of the Motion and Legal Standard***

The Defendant styled her motion as a motion to dismiss under Rule 12(b)(6) or in the alternative as a motion for summary judgment under Rule 56. The proper vehicle for presenting Defendant's exhaustion arguments is a motion under Rule 12(b)(1) challenging subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003). The Court will therefore consider Defendant's motion as a motion to dismiss under that provision. *See Neal v. Residential Credit Solutions, Inc.*, Civ. No. 11-3707, 2012 WL 1453597 *1 (D. Md. April 24, 2012) (considering a motion presented under Rule 12(b)(6) as a motion presented under Rule 12(b)(1)).

As this is properly considered a Rule 12(b)(1) motion, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Khoury*, 268 F. Supp. 2d at 606 (internal quotation marks omitted). Defendant raises a factual challenge to subject matter jurisdiction, and therefore it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).[1] The burden of proving subject matter jurisdiction is on the plaintiff. *Adams* 697 F.2d at 1219. "The court must presume

---

[1] Plaintiff has not been prejudiced by the fact that the Court will consider evidence outside of the pleadings. The title of Defendant's motion put Plaintiff on notice that the Court may consider evidence beyond the pleadings, and the substance of Defendant's motion put Plaintiff on notice in that Defendant had attached and referenced exhibits. Plaintiff not only did not urge the Court to ignore these exhibits, she instead responded with exhibits of her own, and provided the Court with legal guidance as to the standard for ruling on a motion for summary judgment. Plaintiff had proper notice that the Court may consider Defendant's motion as one for summary judgment and responded appropriately. Therefore, Plaintiff had ample opportunity to submit evidence related to the jurisdictional question. *Cf. Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 261 (4th Cir. 1998) (noting that, although it is generally proper for a court to notify a plaintiff when it intends to consider evidence outside of the pleadings and convert a motion to one for summary judgment under Rule 12(d), a court "does not have an obligation to notify parties of the obvious.").

that all factual allegations in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Khoury*, 268 F. Supp. 2d at 606.

## II. *Facts and Procedural Background*

There are many facts alleged in Plaintiff's fifty-page complaint, but the dispositive issue in this case relates to exhaustion and therefore the following summary will focus primarily on the events that have bearing on whether Plaintiff properly exhausted her administrative remedies.

Plaintiff began working for the Baltimore FSDO as an Inspector in September 2006. (Am. Compl. ¶ 21.) Shortly thereafter Plaintiff began to experience the ill effects of the "frat house" culture at this male-dominated workplace. (*See id.* ¶ 23.) Over the course of the next five years, Plaintiff was subjected to a wide variety of mistreatment, ranging from the rudeness of coworkers, to being refused opportunities to advance her career through training, to being the subject of trumped up sexual harassment allegations, to being physically molested. (*See id.* ¶¶ 28, 29, 36, 46-47, 90-91, 102-105, 186-193, 248.) In November 2010, Plaintiff filed a Whistleblower Complaint "regarding air carrier issues and the hostile working environment to which she was constantly exposed." (*Id.* ¶ 210.) According to the EEOC, in December 2010 Plaintiff "presented a claim of hostile work environment for the period [of] September 2006 to March 2011." (FAD Compl. No. 2012-24373-FAA-03 9, Mot. Dismiss Ex. 3, ECF No. 20-4.) Plaintiff was notified by the EEOC of her right to file a formal complaint, but never pursued the matter. *Id.*

Still, she faced retaliation from her co-workers and supervisors for making these complaints, and continued to experience discriminatory and abusive behavior during the next year. In May 2011, as a result of treatment she had received over the years, Plaintiff found

herself unable to come into work due to various conditions including Posttraumatic Stress Disorder and Anxiety Disorder. (Am. Compl. ¶¶ 301-302.)

In November of 2011 Plaintiff was still "formally employed" by the FAA, and she believed that she needed to renew her security badge. (*Id.* ¶ 308; *see* Decl. of Sandra Hawkins ¶ 24, Response to Mot. Dismiss Ex. 2, ECF No. 25-2.) The disposition of Defendant's motion hinges on the events surrounding Plaintiff's attempt to renew her badge, and whether she timely reported those events, so the Court will take some time to explain these events in detail.

Plaintiff had a security badge that allowed her access to the Baltimore Washington International Airport ("BWI") for work and she believed she had to renew that badge by November 24, 2011. (Decl. of Sandra Hawkins ¶ 24.) To do this, Plaintiff had to go to the Maryland Aviation Administration Security Information Display Area office at BWI ("BWI Security"). On November 10, 2011, Plaintiff drove to BWI Security to renew her security badge. (*Id.*) On that day, she realized that she needed a renewal form, signed by her supervisor, Mr. Crampton. (*See id.*) Plaintiff contacted the FSDO and spoke with Dana Hackett, an FSDO employee, about obtaining this form. (*Id.*)

The substance of this conversation is somewhat disputed. Basically, Plaintiff asserts that Ms. Hackett promised that she would send BWI Security a letter "allowing [Plaintiff] to renew [her] badge." (*Id.*) According to Ms. Hackett, Plaintiff called asking about the renewal form *and* how to obtain a new BWI employee parking pass. (*See* Rec. of Tel. Call, Mot. Dismiss Ex. 4, ECF No. 20-5.) According to Ms. Hackett, Ms. Hackett responded that she could send BWI Security a letter explaining that Plaintiff was on sick leave and could not renew the pass before November 24, but Plaintiff would have to come into the office and speak with Mr. Crampton to

4

get the renewal form signed and to get her parking pass sorted out. (*Id.*) Plaintiff denies that she ever asked for a parking pass. (*See* Am. Compl. ¶ 309.)

On November 16, 2011, Mr. Crampton sent a letter to BWI Security in which he explained that Plaintiff was on medical leave and therefore would not be renewing her badge on time, and asked that BWI Security waive any penalty associated with the non-renewal of her badge in November. (Letter to Barbara May, Mot. Dismiss Ex. 5, ECF No. 20-6.) On November 17, Mr. Crampton sent a memorandum to Plaintiff, by certified mail, stating that he was "aware of [Plaintiff's] request to renew [her] . . . [security] badge and Baltimore Airport parking permit." (Memorandum to Sandra Hawkins, Mot. Dismiss Ex. 7, ECF No. 20-8.) Mr. Crampton further explained in this memorandum that the security badge and parking permit are issued and managed by the Maryland Aviation Administration ("MAA") and are designed for people who have to perform work at the airport. (*Id.*) Therefore, because Plaintiff was on leave and was "not expected to return to duty until January 15, 2012" she could not "conduct official business" and could not renew her badge until after January 15, 2012. (*Id.*)

Despite this memorandum addressed to Plaintiff and sent by certified mail, Plaintiff claims that she did not hear anything about her efforts to receive a security badge until December 7, 2011. (Am. Compl. ¶ 309.) On that day, Plaintiff claims that she became aware of three things. First, she "learned," from unidentified sources, that she had "received a formal reprimand for allegedly attempting to obtain a parking pass," something Plaintiff claims she never attempted to do. (*Id.*) Second, Plaintiff heard from her attorney that "the Baltimore FSDO had failed to send a letter supporting the issuance of the new [security] badge." (Decl. of Sandra Hawkins ¶ 25.) Finally, Plaintiff found out from her attorney that "due to Baltimore FSDO's continued refusal to assist [her], [Plaintiff] would have to attend a hearing regarding [her] failure

5

to timely request a new badge." (*Id.* ¶ 26.) Plaintiff has provided the Court no record of a "formal reprimand" and Mr. Crampton has stated under oath that Plaintiff was not reprimanded. (Witness's Aff. 25, Mot. Dismiss Ex. 6, ECF No. 20-7.) Plaintiff has not alleged that she ever attended a hearing, nor has Plaintiff presented the Court with any evidence that a hearing took place.

Plaintiff saw the events surrounding her inability to renew her security badge as points in a long line of harassing and retaliatory behavior. Therefore, on January 17, 2012, 41 days after Plaintiff "learned" of the alleged bad behavior of her supervisor and the ill consequences of her failure to renew her security badge, but 61 days after Mr. Crampton sent her a memorandum informing her that her badge would not be renewed, Plaintiff contacted the FAA's Equal Employment Opportunity Counselor ("EEO Counselor") to "commence the informal EEO process to complain of discrimination." (Am. Compl. ¶ 10.) Roughly five months later, Plaintiff filed a formal complaint with the Agency EEO office. (*Id.* ¶ 13.) A week later, the Agency "dismissed [Plaintiff's] claims as untimely" but incorrectly identified January *27*, not 17, as the date that Plaintiff first contacted the EEO counselor. (*Id.* ¶ 14.) As will be explained in greater detail below, a federal employee has forty-five days after an alleged discriminatory action to contact an EEO Counselor or her complaint will be dismissed as untimely. Plaintiff appealed to the EEOC Office of Federal Operations ("OFO"), and in late 2013 the OFO reversed the Agency's decision to dismiss the claim as untimely. (*Id.* ¶ 15.)

Almost two years later the OFO issued its Final Agency Decision ("FAD") in the matter, in which it held, *inter alia*, that in fact Plaintiff did not timely seek EEO counseling. (FAD Compl. No. 2012-24373-FAA-03 at 10.) Even using the January 17, 2012 date, the OFO reasoned that Plaintiff was "aware of the status of her security credentials" and the fact that she

would not be able to renew them before her deadline when she called Ms. Hackett, on November 10, 2011. (*Id.*) The OFO acknowledged that Plaintiff may have "sought assistance from her attorney" on December 7, but that did not "toll the time limit for contacting an EEO Counselor." (*Id.*)

Meanwhile, Plaintiff had left the Agency in 2011. In May 2011 Plaintiff "had to leave work for an indefinite period due to her deteriorating health caused by" her hostile work environment. (Am. Compl. ¶ 301.) Plaintiff was officially removed from the agency "for excessive absence" on October 26, 2012. (*See* Letter to Sandra Hawkins 2, Mot. Dismiss Ex. 8, ECF No. 20-9.) Plaintiff, believing that this too was a discriminatory and/or retaliatory act, initiated EEO Counselor contact and ultimately filed a formal complaint on November 22, 2012. (*See* FAD Compl. No. 2012-24676-FAA-02 2, Mot. Dismiss Ex. 12, ECF No. 20-13.) Ultimately, in 2013 the OFO issued a FAD, finding that her termination was not due to discrimination. (*Id.* at 28.)

Plaintiff received the FAD in regard to her previous EEO complaint on August 23, 2016. (Am. Compl. ¶ 19.) Plaintiff brought this lawsuit eighty-nine days later, on November 20, 2016, alleging gender discrimination, hostile work environment, and retaliation, as well as a "constructive discharge" claim. (*See* Am. Compl. ¶¶ 321-334.)[2]

### III. *Analysis*

Plaintiff is suing under Title VII of the Civil Rights Act of 1964, which creates a right of action for private sector employees and some federal employees to challenge discriminatory conduct by their employers. *See Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). Before

---

[2] Is it not apparent from the face of the complaint that Plaintiff actually pled a "constructive discharge" claim, but she did reference her "Discharge of Employment" (*see, e.g.*, Am. Compl. p. 46) and argued that she made such a claim in her Response (*see* Response Mot. Dismiss at 31-34). Whether Plaintiff properly pled this claim is immaterial, because, as will be explained below, she failed to exhaust all of her claims.

pursuing their action in a federal court, however, these employees must exhaust their administrative remedies. *Id.* Failure to exhaust these remedies deprives a federal court of subject matter jurisdiction over the case. *See Tonkin v. Shadow Management, Inc.*, 605 F. App'x 194, 194 (4th Cir. 2015). "The administrative remedies available for federal employees are significantly broader than the administrative remedies for employees in the private sector," *Laber*, 438 F.3d at 416, and therefore a federal employee has somewhat more steps to follow before her claim is properly exhausted and she can bring her case to federal court.

The Supreme Court, in *Brown v. General Services Administration*, 425 U.S. 820 (1976), explained the basic process that a federal employee must go through before he can file a Title VII claim in federal court:

> Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the [EEOC] or, alternatively, he may, within [90] days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the [EEOC]. If he does appeal to the [EEOC], he may file suit within [90] days of the [EEOC's] final decision.

425 U.S. at 831. With regard to the first step – seeking relief inside the agency – an employee must contact her Agency EEO Counselor within forty-five days of an alleged discriminatory matter. *See* 29 C.F.R. 1614.105(a). This "matter" could be one incident in a long line of actions constituting a hostile work environment claim, *see National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002) (explaining continuing violation doctrine), or it could be a discrete action, like a demotion. This forty-five day limit can be extended if Plaintiff showed that she was "not notified of the time limits and was not otherwise aware of them" or if she "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred," or if there are other equitable reasons for tolling the time limit. 29 C.F.R. § 1614.105(a)(2).

8

This case hinges on whether Plaintiff exhausted her claims, and that determination is muddied by the fact that Plaintiff's complaint, while extremely detailed in its presentation of the facts, is rather light on explanation of the actual claims that Plaintiff is bringing, and precisely what actions underlie which claims. After reading the complaint, the evidence presented to the Court, and Plaintiff's arguments in support of its positions, it becomes (relatively) clear that this case boils down to whether or not Plaintiff's January 17, 2012 contact with an EEO Counselor was within the forty-five day period set forth in the federal regulations. This is because Plaintiff failed to pursue her termination claim that she brought in late 2012,[3] and she did not seek out an EEO Counselor within forty-five days of her leaving the Agency in May of 2011. Therefore, the only possible path for Plaintiff to bring her claims, including her "constructive discharge" claim, in this Court is if (1) the actions of her employer in November of 2011 were part of a generally hostile work environment or were themselves retaliatory, and that the hostile work environment or retaliation led to her leaving the Agency in 2011, and (2) she contacted an EEO Counsel within forty five days of those actions, or, as will be explained below, within forty five days of her learning about those actions.

To be clear, the Court is not holding that Plaintiff's constructive discharge claim is related enough to Plaintiff's hostile work environment and retaliation claims such that Plaintiff did not have to exhaust that claim on its own.[4] Nor does the Court take up the issue of whether it could consider conduct prior to December 2011 that the EEOC believed had already been dealt with.[5] The Court does not need to decide these issues because, even if the Court were to find in

---

[3] I.e., she did not file a lawsuit in federal court within 90 days of the final agency decision.
[4] Plaintiff seems to make the argument in her response that her failure to pursue her November 2012 EEOC complaint is irrelevant because her current claim is for a "constructive discharge" which is related to her general hostile work environment claim. (*See* Response to Mot. Dismiss 33.)
[5] Defendant argues that even if the Court found that Plaintiff had properly exhausted the claims she brought in early 2012 which are the subject of this lawsuit, the Court would not be able to consider actions that her employer took

Plaintiff's favor on these issues, the Court ultimately agrees with the EEOC: Plaintiff did not contact an Agency EEO Counselor within forty-five days of the alleged discriminatory action.

To explain why, the Court must first explain what would constitute such an alleged discriminatory action. Plaintiff alleged that she was subjected to a hostile work environment. Under the "continuing violation doctrine" when a Plaintiff alleges a hostile work environment it is only necessary that one of the actions that contributed to the hostile environment occurred within the period, here forty-five days, in which the Plaintiff had to raise her complaint. *See Morgan*, 536 U.S. at 117. That act which falls within the forty-five day window does not itself have to constitute an entire claim of hostile work environment, nor does there have to be sufficient acts within the forty-five day period to serve as the basis for an entire hostile work environment claim. *See Vickers v. Powell*, 493 F.3d 186, 200 (D.C. Cir. 2007). Nor does that incident which falls within the 45 day period need to be particularly serious or egregious. Rather "an incident falling within the applicable limitations period need only, in order for the continuing violation doctrine to apply, have contributed to the hostile work environment." *Gillam v. South Carolina Dept. of Juvenile Justice*, 474 F.3d 134, 141 (4th Cir. 2007). In other words, *any* part of a hostile work environment claim has to have occurred within forty-five days of seeking out an EEO counselor.

This may be a low bar, but it is a bar nonetheless. Whatever action that occurred within forty-five days of seeking out an EEO counselor must be *something* that could be part of a hostile work environment claim. It must be an action that, in context, is part of an environment that is "both objectively and subjectively offensive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). That is, "looking at all the circumstances," is this something that a "reasonable

---

before December 2011, because Plaintiff's failure to pursue her prior EEOC complaint in March 2011 bars those claims. (*See* Mot. Dismiss 9-10.)

person would find [to be] hostile or abusive." *Id.* (internal quotation marks omitted). The Court does not need to put blinders on and look at the one alleged discriminatory action that occurred within the forty-five day period in isolation; but the Court does need to determine whether that action was an offensive one, and one perpetrated by the employer.

Plaintiff argues that the relevant actions are those that occurred on December 7, 2011, yet there is no allegation that Plaintiff's employer did *anything* on December 7, 2011. Plaintiff, however, seems to be making the argument that December 7 is the proper day for starting her forty-five day clock because this is the first day on which she had a "reasonable suspicion" that a discriminatory action had occurred. (*See* Response to Mot. Dismiss 26); 29 C.F.R. § 1614.105(a)(2) (forty-five day time limit shall be extended when, *inter alia*, an aggrieved person "did not know and reasonably should not have . . . known that the discriminatory matter . . . occurred"); *Upshaw v. Consumer Product Safety Comm'n*, Civ. No. 12-3130, 2014 WL 1896740, at *5 (D. Md. May 12, 2014) (quoting *Coghlan v. Peters*, 555 F. Supp. 2d 187, 200 (D.D.C. 2008) (stating that the forty-five day limitation should be tolled until "plaintiff has a reasonable suspicion that he has been the victim of discrimination"). Put differently, Plaintiff seems to believe that her forty-five day clock should be tolled. (*See* Response to Mot. Dismiss 26, ECF No. 25 (citing *Saunders v. Mills*, 842 F. Supp. 2d 284, 290 (D.D.C. 2012).) Indeed, because there is no allegation or evidence that Defendant took any action with respect to Plaintiff on December 7, 2011, Plaintiff's *only* argument can be that the forty-five day clock should be tolled. In other words, Plaintiff must be alleging that she was subjected to some discriminatory act *before* December 7, but only had a reasonable suspicion that the act occurred on that date.

This unarticulated yet implicit argument naturally leaves two important questions: what was the discriminatory act (or acts) to which Plaintiff was subjected in November, and did

11

Plaintiff reasonably not learn of those actions until December 7? There are only three candidates for a discriminatory act that occurred in November, because there are only three actions which Plaintiff claims she became aware of on December 7: 1) the failure of anyone at the FSDO to send a letter to BWI Security authorizing renewal of her security badge, 2) her being subjected to a hearing for failing to renew her security badge, or 3) the reprimand for her alleged attempt to renew her parking pass. Plaintiff has the burden of proving that this Court has subject matter jurisdiction, i.e. that she properly exhausted her claim. Plaintiff has not met the burden of proving that any of these actions in November of 2011 were in any way discriminatory or offensive such that they could constitute part of a hostile work environment claim. Further, even if one of these actions were discriminatory or offensive, Plaintiff has not sufficiently explained why she did not learn of them until December 7. Therefore, Plaintiff has not met her burden of showing that she properly exhausted her claims.

With regard to the first candidate for a discriminatory action in November – the failure of anyone at the Baltimore FSDO to send a letter to BWI Security – someone at the FSDO *did* send a letter to BWI Security. This letter did not authorize Plaintiff's renewal of her security badge, but it explained why Plaintiff would not be able to renew and respectfully asked that Plaintiff not be subjected to any penalty for not renewing before November 24. Plaintiff states in her Response that she "ascertained from MAA that she was authorized to have her badge renewed because she was still employed at the FAA" which was "contrary to what Mr. Crampton had stated." (Response to Mot. Dismiss at 20.) Even if it was true that being on sick leave was not an impediment to renewing Plaintiff's security badge (something that Plaintiff did not allege in her complaint, and for which there is no supporting evidence other than Plaintiff's declaration that her then-attorney told her this was true) such information does not suggest that Mr.

12

Crampton's actions were discriminatory or offensive. Whether or not, under MAA protocol, Plaintiff technically could renew her badge is irrelevant. What matters is whether Mr. Crampton's conduct (or the conduct of anyone at the Baltimore FSDO) in preventing her from renewing her badge (if that is what they did) was offensive or discriminatory. The evidence shows that Plaintiff attempted to renew her security badge within the time in which she would ordinarily have to renew her badge, that her supervisor informed her that he would not renew her badge because she was on leave, and that her supervisor informed BWI security of this fact and specifically asked that no harm befall her as a result. The mere fact that she did not have security credentials authorizing her to do work that she was medically excused from doing is not evidence of discrimination or offensive or abusive behavior. Still, a negative consequence stemming from her inability to renew her credentials might be.

That brings the Court to the second candidate for a discriminatory act in November. Plaintiff alleges that there *was* such a negative consequence from her failure to renew her badge: she "would have to attend a hearing regarding [her] failure to timely request a new badge." (Decl. of Sandra Hawkins ¶ 26.) This action, however, cannot be the temporal hook which salvages Plaintiff's claim for three reasons: it is nowhere alleged in her complaint, it is not something that her employer did (*see* Decl. of Sandra Hawkins Attachment B (explaining that "Ms. Hawkins has now received notice *from the SIDA Compliance office* that she will have to attend a hearing regarding her failure to timely renew her badge" (emphasis added)), and, regardless, there is no evidence that she ever attended a hearing. Drawing all reasonable inferences in Plaintiff's favor, these are the facts surrounding this hearing: despite her employer's request, Plaintiff received notice from an office that she did not work for that she

13

would have to attend a hearing with them, but never actually attended said hearing. That is not an offensive or discriminatory act by Plaintiff's employer.

The final candidate for a discriminatory act that Plaintiff learned about on December 7 is the "formal reprimand." (Am. Compl. ¶ 309.) This too cannot serve as an offensive action within the ambit of Plaintiff's hostile work environment claim. There is no record of a reprimand, formal or otherwise. Plaintiff's attorney in 2011 sent a letter to Mr. Crampton on December 8, 2011 in which she thoroughly discussed Plaintiff's attempt to renew her badge, but did not mention a reprimand. (*See* Decl. of Sandra Hawkins Attachment B.) Plaintiff does not explain, in her complaint or declaration, how or from whom she "learned" of this reprimand (in her declaration she does not use the word reprimand, but instead states that she "found out that the agency was going to counsel me" (Decl. of Sandra Hawkins ¶ 25)). Mr. Crampton stated, under oath, that Plaintiff was never reprimanded. (Witness's Aff. at 25.) The Court will assume that all factual allegations in Plaintiff's complaint are true, and therefore the Court assumes that Plaintiff did "learn" of this "formal reprimand" on December 7, 2011. But the Court does not have to assume that Plaintiff was ever actually reprimanded. Perhaps Plaintiff heard a rumor that she was going to be reprimanded. Perhaps she heard a rumor that Mr. Crampton was mad about her alleged attempt to renew her parking pass. Perhaps Mr. Crampton *was* mad because he mistakenly believed that Plaintiff was attempting to renew her parking pass. The Court does not need to sort through each possibility because this much is clear: hearing that a supervisor might be mad about something and might do something about it without any evidence that the supervisor *was* mad or actually *did* do something about it (and, in fact, some evidence to the contrary) is not an adverse employment action that can serve as part of a hostile work environment claim.

What's more, even if one of these acts *were* something that could serve as part of a hostile work environment claim, Plaintiff would still have to demonstrate why she reasonably did not learn of these events until December 7. For instance, even if the Court found that it was offensive or discriminatory for Mr. Crampton to send a letter to BWI Security that did not ask for Plaintiff's security badge to be renewed, Plaintiff would have to explain why it was reasonable for her to learn of this action on December 7 and not when she received a memorandum from Mr. Crampton explaining that action on, or shortly after, November 17. Or, when Plaintiff was "formally reprimand[ed]" due to a mistaken belief that she had attempted to renew her parking pass, why did Plaintiff not learn of this reprimand prior to December 7, twenty-seven days after Plaintiff's phone call with Ms. Hackett in which Ms. Hackett thought Plaintiff was trying to renew her parking pass, and twenty days after Mr. Crampton sent Plaintiff a memorandum explaining the matter.

Plaintiff's complaint is highly detailed, containing roughly 300 paragraphs of facts. Her response to Defendant's motion to dismiss is similarly thorough, at thirty-five pages, and with several attached exhibits, including a prepared declaration. As Plaintiff admits, Defendant's "primary argument" was that Plaintiff failed to properly exhaust her administrative remedies by not contacting an EEO Counselor within forty-five days. (Response to Mot. Dismiss 25.) Yet in all this material, and with the notice provided by Defendant's motion, Plaintiff has failed to provide allegations, evidence, or even compelling argument that anything occurred on December 7, 2011, or any time after December 3, 2011 (forty-five days before Plaintiff reached out to an EEO Counselor) that would comprise part of her hostile work environment claim. Nor has Plaintiff explained what activities that occurred before December 3 could comprise part of that claim, or why the forty-five day limit should be tolled until December 7. The absence of

evidence is not evidence of absence, but Plaintiff's failure to sufficiently explain why December 7 is the proper date from which to start her forty-five day clock is telling, and, ultimately, fatal to her complaint. Because Plaintiff cannot show that she contacted an EEO Counselor within forty-five days of any action underlying her hostile work environment or retaliation claim, she did not properly exhaust those claims, including conduct prior to March 2011, and any related claims, such as a possible constructive discharge claim.

## IV. *Conclusion*

Plaintiff failed to administratively exhaust her claims and therefore this Court lacks subject matter jurisdiction. Therefore, Plaintiff's motion to dismiss will be granted and this case will be dismissed by accompanying order.

DATED this 6th day of November, 2017

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge